■ The People of the State of New York, Respondent, v John C. Greenleaf, Appellant. [634 NYS2d 892] —Crew III, J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered June 2, 1994, convicting defendant upon his plea of guilty of the crime of murder in the second degree.

On the morning of May 22, 1993, Officer Kevin Parkison of the Johnson City Police Department received a telephone call from Heather Christianson reporting a serious fight in progress at 22 Mildred Avenue in the Village of Johnson City, Broome County. Parkison and Officer David Voorhees re-

sponded to the call and arrived at the Mildred Avenue location within minutes. Christianson called to the officers from her third floor window that the fight was downstairs and that she heard a male crying for help. Two other witnesses at the scene gave the officers identical information. The officers went to the apartment where the fight had been taking place and knocked on the front and back doors while identifying themselves as police, but received no response. They then spoke with Christianson and the other two witnesses, who advised them that the landlord lived next door and would have a key to the apartment. The officers sought out the landlord, who unlocked the back door of the apartment, and the officers entered, again announcing that they were police. Hearing no response, Parkison opened a closed door that led into the living room where he observed Troy Unverdorben and defendant sitting on a couch. Upon closer inspection he noted that Unverdorben was unconscious, had no pulse and was bleeding severely from several stab wounds. Unverdorben subsequently was transported by ambulance to the hospital where he died of massive internal bleeding.

Defendant was indicted on two counts of murder in the second degree. Following a combined *Huntley/Mapp* hearing, wherein County Court denied defendant's suppression motion, defendant pleaded guilty to one count of murder in the second degree and was sentenced to an indeterminate term of imprisonment of 15 years to life. Defendant now appeals.

Defendant contends that County Court erred in denying his motion to suppress because the warrantless entry by the police into his apartment was unlawful. We disagree. It is beyond cavil that in the case of an emergency, a warrantless entry into one's residence does not violate the constraints of the 4th Amendment (*see, People v Mitchell*, 39 NY2d 173, *cert denied* 426 US 953). In *People v Mitchell* (*supra*, at 177-178), the Court of Appeals established a three-prong test for applying the emergency exception to the warrant requirement: "(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize evidence. (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." It is defendant's contention that the People failed to elicit facts which satisfied the first prong of the *Mitchell* test. Specifically, defendant argues that the police officers' actions in conferring with the witnesses present and then going next

door to get the landlord, instead of immediately effecting a forced entry, is demonstrative that the police did not believe that an emergency existed.

Defendant misapprehends the standard applicable in determining whether reasonable grounds exist to believe that an emergency is at hand. The *Mitchell* Court instructed that reasonable grounds must be based upon objective, empirical facts and not upon the subjective belief of the police (*supra*, at 178). The fact that the police were advised by several witnesses that only minutes before their arrival they heard "slamming" and "banging" in the apartment and a male cry out for help, provided the necessary objective, empirical facts to believe that an emergency was at hand. And while the fighting obviously had ceased by the time the police arrived, it was highly probable that a danger still existed given the extremely short period of time it took the officers to respond to the call (*see, People v DePaula*, 179 AD2d 424, 426).

Defendant next contends that County Court erred in denying his motion to suppress certain oral statements made by him at the police station. We disagree. The evidence at the suppression hearing clearly indicated that defendant appeared distant and dazed. Detective David Goodrich, who questioned defendant, testified that his "fixed stare" prompted him to inquire into defendant's condition. In so doing, he learned that defendant was "tripping" on LSD, had taken marihuana and had been drinking heavily the night before. Thereafter Goodrich advised defendant of his *Miranda* warnings and began his questioning. We are of the view, given defendant's appearance, that Goodrich's prefatory questions concerning defendant's physical condition were similar to pedigree questions or those necessary for providing for defendant's physical needs and clearly were not for the purpose of attempting to inculpate him (*see, People v Rogers*, 48 NY2d 167, 173; *People v Hester*, 161 AD2d 665, 666, *lv denied* 76 NY2d 858; *People v Nelson*, 147 AD2d 774, 775-776, *lv denied* 74 NY2d 794).

Finally, defendant's contention that the search warrant was invalid because there were no facts in the application justifying the "no-knock" provision is similarly rejected. It is clear that the police inadvertently failed to strike out the no-knock provision from the preprinted application form and warrant and that there was never any intent to seek such authority. We previously have held that such inadvertence is insufficient to invalidate a warrant (*see, People v Parliman*, 56 AD2d 966, 967).

Mikoll, J. P., Yesawich Jr., Peters and Spain, JJ., concur. Ordered that the judgment is affirmed.